IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

| | |
|---|---|
| INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA and LOCAL UNION 1702, UNITED MINE WORKERS OF AMERICA<br><br>          Plaintiffs,<br><br>v.<br><br>MONONGALIA COUNTY COAL COMPANY<br><br>          Defendant. | Civil Action No. 1:15-CV-21 (Keeley)<br><br>Electronically filed: 02/06/2015 |

## COMPLAINT

Plaintiffs International Union, United Mine Workers of America and Local 1702, United Mine Workers of America (collectively, "UMWA"), by and through counsel, bring this action to compel enforcement of the final and binding arbitration award of Arbitrator I. Bernard Trombeta which was rendered under the terms of the parties' collective bargaining agreement in Case No. 11-31-14-055 on June 10, 2014.  A true and correct copy of Arbitrator Trombetta's Opinion and Award is attached hereto as **Exhibit A**.

### Jurisdiction and Venue

1.     This Court has subject matter jurisdiction over this action under Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and under 28 U.S.C. § 1331.

2. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 185(a).

**Parties**

3. Plaintiff, International Union, United Mine Workers of America ("International Union" or "UMWA") is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and maintains its principal office in Triangle, Virginia and its District 31 office in Fairmont, West Virginia. The International Union represents the bargaining unit employees of Defendant Monongalia County Coal Company ("MCCC" or the "Company") and other companies for purposes of collective bargaining and other labor matters.

4. Plaintiff, Local Union 1702, United Mine Workers of America ("Local 1702" or the "Local" or "UMWA") is an autonomous and unincorporated association and labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5), which maintains its office in Morgantown, West Virginia. Local 1702 represent the bargaining unit workers of MCCC at the Company's Monongalia County Mine, for purposes of collective bargaining and grievance processing and arbitration.

5. Defendant, Monongalia County Coal Company ("MCCC") operates the Monongalia County Mine, an underground bituminous coal mine, which straddles the West Virginia and Pennsylvania State lines. MCCC is incorporated under the laws of the State of West Virginia and is an employer engaged in interstate commerce or in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7) of the National Labor Relations Act, 29 U.S.C. §§ 152(2), (6)-(7).

**Facts**

6. MCCC and the UMWA are signatory to or bound by a collective bargaining agreement, commonly referred to as, The 2011 National Bituminous Coal Wage Agreement ("2011 NBCWA" or the "Agreement"), which governs, *inter alia*, the wages, hours, and working conditions of bargaining unit employees at the Monongalia County Mine. A copy of the portions of the Agreement relevant to this matter is attached hereto as **Exhibit B**.

7. Article IA of the parties' Contract establishes that the production of coal and related work is exclusively that of bargaining unit (Union) employees and also circumscribes and limits the employer's ability to contract out work of the kind normally performed by bargaining unit employees. That provision reads, in pertinent part, as follows:

> *Section (a)* **Work Jurisdiction**
>
> The production of coal, including removal of overburden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement. Contracting, subcontracting, leasing and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.
>
> \*\*\*
>
> *Section (g)* **Contracting and Subcontracting**
>
> (2) Repair and Maintenance Work – Repair and maintenance work of the type customarily performed by
3

> classified employees at the mine or Central shop **shall not be contracted out** except (a) where the work is being performed by a manufacturer or supplier under warranty…; or (b) where the Employer does not have available equipment or regular employees, (including laid off employees at the mine or Central shop) with necessary skills available to perform the work or central shop. (emphasis added)
>
> \*\*\*
>
> *Section (i)* **Construction Work**
>
> All construction of mine or mine related facilities, including the erection of mine tipples and sinking of mine shafts or slopes customarily performed by classified Employees of the Employer normally performing construction work in or about the mine in accordance with past practice and custom **shall not be contracted out at any time unless all** such employees with necessary skills to perform the work are working no less than five days per week or its equivalent for employees working on alternative schedules. (emphasis supplied)
>
> \*\*\*

8. The parties' Contract in, Article XXXIII also provides for a grievance and arbitration process and requires that the parties engage in an earnest effort to resolve any disputes arising between them. Section (h) of this Article additionally mandates that any decision rendered or settlement reached in the grievance process be considered final and binding between the parties. Excerpts of Article XXIII of the extant Contract read, in pertinent part:

> *Section (e)* **Earnest Effort to Resolve Disputes**
>
> An earnest effort shall be made to settle differences at the earliest practicable time. Where an Employee makes a complaint during work time, the foreman shall, if requested to do so, and if possible, consistent with continuous production, discuss the matter briefly on the spot.

4

***

*Section (h)* **Finality of Decision or Settlement**

> Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement. Settlements reached at steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and the Employer. **(Exhibit A)**

9. Previously, a dispute arose over the Company's subcontracting of bargaining unit work, *i.e.*, the construction and installation of seals in the mine. The dispute was not resolved by the parties and was referred to an Arbitrator for resolution. The Arbitrator in that case (Arbitrator Moscovitch) sustained the Union's grievance on September 9, 2010, and issued and award ruling that the construction and installation of seals in the mine was the exclusive work of the bargaining unit (Union) employees.

10. The Company did not challenge the prior award of Arbitrator Moscovitch; however, despite the issuance of Arbitrator Moscovitch's award determining the construction and installation of seals to be the exclusive work jurisdiction of the Union employees, the Company continued to contract out the seal work in the mines. This continuing violation gave rise to additional grievances and arbitration proceedings; and finally culminating with instant grievance being filed by the Union specifically seeking to compel the Company's compliance with Moscovitch award including a "make whole" remedy and a Cease and Desist Order.

11. The parties were unable to resolve this second grievance; and, the matter was ultimately referred to Arbitrator I. Bernard Trombetta for resolution.

12. A hearing was conducted before Arbitrator Trombetta on May 7, 2014, during which the Arbitrator afforded the parties a full and fair opportunity to present witnesses, evidence, and argument in support of their respective positions.

13. As framed by the Arbitrator, the issues to be resolved in this case were :

   i. Is construction and installation of mine seals the exclusive work of the union?;

   ii. Did the Company violate the collective bargaining agreement by subcontracting out the construction and installation of the mine seals?

   iii. Is the award of Arbitrator Moskovitz precedential and binding herein? and,

   iv. Is the Union entitled to a remedy? (ARB Dec pp. 3, Ex A)

14. In the arbitration proceedings, the Union claimed that the Company had violated the Moscovitch Award by continuing to contract out the same seal work previously ruled to be the exclusive work of the bargaining unit employees. As a remedy, the Union requested that it be made whole; and that, a cease-and-desist order be issued. In response, the Company argued that the Moskovitz award was infirm and non-precedential; and as such, the Company was privileged or excused from compliance with the prior award.

15. After considering the parties' witnesses, evidence, arguments, their history and past practice at the mine, and the prior arbitration decisions, Arbitrator Trombetta sustained the Union's grievance in a decision issued on or about June 10, 2014. Specifically, the award reads:

> The grievance is granted. The Company is to make the union whole as requested. The arbitrator also orders that the company cease and desist from subcontracting any further seal construction and installation [work] to outside

      contractors, except for the application of patented compound materials. The arbitrator retains jurisdiction over this matter for the determination of making the union whole as requested in the grievance. (Arb. Dec. pp. 19, Exhibit A)

16. With respect to the need for the cease and desist order, Arbitrator Trombetta, after considering the award of Arbitrator Moskovitz and other pertinent arbitral precedent and authority, specifically opined that, " A cease- and- desist order is the best remedy to prevent against the continued subcontracting of seal work." (ARB Dec. pp 16, Ex. A)

17. Notwithhstanding the above-noted contractual pledges and obligations set forth in ¶ 7 above, and the clear directive of the Arbitrator to cease and desist from continuing to violate the contract in the same manner, the Defendant has ignored the Plaintiffs' numerous requests for compliance; and, in a ongoing course of conduct, continued to utilize outside contractors to perform the same bargaining unit work (*i.e.* the construction and installation of seals) at issue before Arbitrator Trombetta.

18. Notwithstanding Arbitrator Trombetta's clear and unambiguous Opinion and Award, MCCC has refused to abide by the decision by stating its intention not to do so; and, the Union's efforts to persuade MCCC to reconsider this position have been fruitless. The Company, therefore, stands in violation of the terms of its collective bargaining agreement with the UMWA.

19. Defendant's continued use of contractors has undermined the integrity of the extant Collective Bargaining Agreement, caused low employee morale and deprived the bargaining unit employees of lost work opportunities, pension and welfare fund contributions,

and also caused Plaintiffs to suffer an unnecessary expenditure of funds as a result of the processing of increased grievances and arbitration as well as the loss of dues income from members who lost work opportunities because of Defendant's contracting out scheme all of which has negatively impacted the financial well-being of Plaintiffs and their members.

20. Arbitrator Trombetta's Opinion and Award of June 10, 2014, is a final and binding arbitrol decision consistent with the express terms of the 2011 NBCWA.

21. Arbitrator Trombetta's Opinion and Award draws its essence from the parties' collective bargaining agreement, the 2011 NBCWA.

**WHEREFORE,** the Plaintiffs request respectfully that this Court:

22. Enter judgment and relief in their favor and against MCCC by declaring that Arbitrator Trombetta's June 10, 2014, Opinion and Award is final, binding and enforceable;

23. Order specific enforcement of the Opinion and Award, including the make whole portion of the award and to Cease and Desist from similar violations;

24. Permanently enjoin Plaintiff from utilizing contractors in any manner inconsistent with the express and governing provisions of the NBCWA;

25. Award them damages for lost work opportunities by their members, lost pension and health fund contributions and lost dues revenues as a result of the utilization of contractors and the award of both pre- and post-judgment interest of the monetary part of the award;

26. Award Local 1702 and the International Union their costs and reasonable attorneys' fees incurred in this matter; and

27. Award such other relief as the Court deems just and proper.

Respectfully Submitted,

    /s/ Charles F. Donnelly
Charles F. Donnelly – WVSB No. 1039
United Mine Workers of America
1300 Kanawha Boulevard East
Charleston, West Virginia 25301
Telephone:  304.343.0259
Facsimile:  304.343.0250
cdonnelly@umwa.org